IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

—————————

PLANNED PARENTHOOD ARIZONA, INC., SUCCESSOR-IN-INTEREST TO
PLANNED PARENTHOOD CENTER OF TUCSON, INC.; LAURA CONOVER, PIMA
COUNTY ATTORNEY,
*Appellants,*

*v.*

KRISTIN K. MAYES, ATTORNEY GENERAL OF THE STATE OF ARIZONA,
*Appellee,*

*and*

ERIC HAZELRIGG, M.D., AS GUARDIAN AD LITEM OF UNBORN CHILD OF
PLAINTIFF JANE ROE AND ALL OTHER UNBORN INFANTS SIMILARLY SITUATED;
DENNIS MCGRANE, YAVAPAI COUNTY ATTORNEY,
*Intervenors.*

—————————

No. CV-23-0005-PR
Filed April 9, 2024

—————————

Appeal from the Superior Court in Pima County
The Honorable Kellie L. Johnson, Judge
No. C127867
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
254 Ariz. 401 (App. 2022)
**VACATED**

—————————

COUNSEL:

D. Andrew Gaona (argued), Austin C. Yost, Coppersmith Brockelman PLC,
Phoenix; and Diana O. Salgado, Planned Parenthood Federation of
America, Washington, DC, Attorneys for Planned Parenthood Arizona Inc.

Laura Conover, Pima County Attorney, Samuel E. Brown (argued),
Jonathan Pinkney, Pima County Attorney's Office, Tucson; and Aadika

Singh, Joshua Rosenthal, Cristian Torres, Public Rights Project, Oakland, CA, Attorneys for Laura Conover

Kristin K. Mayes, Arizona Attorney General, Joshua D. Bendor (argued), Solicitor General, Alexander W. Samuels, Assistant Solicitor General, Luci D. Davis, Assistant Attorney General, Phoenix, Attorneys for Kristin K. Mayes

Kevin H. Theriot, Jacob P. Warner (argued), Alliance Defending Freedom, Scottsdale; John J. Bursch, Alliance Defending Freedom, Washington, DC; and Denise M. Harle, Alliance Defending Freedom, Lawrenceville, GA, Attorneys for Eric Hazelrigg and Dennis McGrane

Joshua W. Carden, Carden Livesay, Ltd, Mesa, Attorney for Amicus Curiae American College of Pediatricians

Kevin L. Beckwith, Law Offices of Kevin L. Beckwith P.C., Phoenix; Olivia F. Summers, American Center for Law and Justice, Washington, DC, Attorneys for Amici Curiae Charlotte Lozier Institute et al.

Roberta S. Livesay, Carden Livesay, Ltd, Mesa, Attorney for Amicus Curiae American Association of Pro-Life Obstetricians and Gynecologists

Parker C. Fox, Phoenix and Tim Griffin, Arkansas Attorney General, Nicholas J. Bronni, Arkansas Solicitor General, Dylan L. Jacobs, Deputy Solicitor General, Hannah L. Templin, Assistant Solicitor General, Little Rock, AR, Attorneys for Amicus Curiae State of Arkansas and 16 Other States

Kory Langhofer, Thomas Basile, Statecraft PLLC, Phoenix, Attorneys for Amici Curiae Speaker of the Arizona House of Representatives Ben Toma and President of the Arizona Senate Warren Petersen

Andrew S. Lishko, May, Potenza, Baran & Gillespie, P.C., Phoenix, Attorneys for Amicus Curiae Jill Norgaard

Steven H. Aden, Americans United for Life, Washington, DC; and Samuel D. Green, Reason for Life, Palmdale, CA, Attorneys for Amicus Curiae Center for Arizona Policy

Timothy D. Ducar, Law Offices of Timothy D. Ducar, PLC, Scottsdale; and Mathew D. Staver, Liberty Counsel, Orlando, FL, Attorneys for Amici Curiae Arizona Life Coalition, Frederick Douglass Foundation, and the National Hispanic Christian Leadership Conference

Doug Newborn, Doug Newborn Law Firm, PLLC, Tucson, Attorney for Amicus Curiae Christian Medical and Dental Associations

Abigail J. Mills, Schmitt Schneck Even & Williams, P.C., Phoenix, Attorneys for Amicus Curiae The Prolife Center at the University of St. Thomas (MN)

David J. Euchner, Lauren K. Beall, Arizona Attorneys for Criminal Justice, Tucson, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

Susan C. Salmon, Joy E. Herr-Cardillo, The University of Arizona, James E. Rogers College of Law, Tucson, Attorneys for Amicus Curiae the Family & Juvenile Law Association, University of Arizona, James E. Rogers College of Law

Alexis E. Danneman, Jean-Jacques Cabou, Perkins Coie LLP, Phoenix, Attorneys for Amicus Curiae National Council of Jewish Women of Arizona

Adriane Hofmeyr, Hofmeyr Law PLLC, Tucson; and Orlando Economos, Benjamin Seel, Democracy Forward Foundation, Washington, DC, Attorneys for Amici Curiae Law Professors

Sambo (Bo) Dul, Neta Borshansky, Noah T. Gabrielsen, Office of Governor Katie Hobbs, Phoenix, Attorneys for Amicus Curiae Governor Katie Hobbs

Bruce Samuels, Lauren A. Crawford, Hannah Dolski, Anita Ramalho Rocha, Papetti Samuels Weiss McKirgan LLP, Scottsdale, Attorneys for Amici Curiae League of Women Voters of Arizona and Arizona Business Owners

Timothy J. Berg, Emily Ward, Fennemore Craig, P.C., Phoenix, Attorneys for Amicus Curiae Joel John

Christopher D. Thomas, Karen Scherner Aldama, Kristine J. Beaudoin, Perkins Coie LLP, Phoenix; and Nicole Saharsky, Mayer Brown LLP, Washington, DC, Attorneys for Amici Curiae American College of Obstetricians and Gynecologists, American Medical Association, Arizona Medical Association and Society for Maternal-Fetal Medicine

J. Stanley Martineau, Martineau Law, PLLC, Mesa, Attorneys for Amici Curiae Mario Villegas and Estate of Baby Villegas

———————

JUSTICE LOPEZ authored the Opinion of the Court, in which JUSTICES BOLICK, BEENE, and KING joined. VICE CHIEF JUSTICE TIMMER authored a dissenting opinion in which CHIEF JUSTICE BRUTINEL joined.[1]

———————

JUSTICE LOPEZ, Opinion of the Court:

¶1 We consider whether the Arizona Legislature repealed or otherwise restricted A.R.S. § 13-3603 by enacting the abortion statutes in Title 36,[2] namely A.R.S. § 36-2322, the statute proscribing physicians from performing elective abortions after fifteen weeks' gestation. This case involves statutory interpretation—it does not rest on the justices' morals or public policy views regarding abortion; nor does it rest on § 13-3603's constitutionality, which is not before us.

¶2 We conclude that § 36-2322 does not create a right to, or otherwise provide independent statutory authority for, an abortion that repeals or restricts § 13-3603, but rather is predicated entirely on the

---

[1] Justice William G. Montgomery has recused himself from this case.

[2] References to "Title 36" pertain strictly to the abortion statutes codified in title 36, chapters 20 and 23, §§ 36-2151 through -2164, and §§ 36-2301 through -2326.

existence of a federal constitutional right to an abortion since disclaimed by *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 292 (2022). Absent the federal constitutional abortion right, and because § 36-2322 does not independently authorize abortion, there is no provision in federal or state law prohibiting § 13-3603's operation. Accordingly, § 13-3603 is now enforceable.

**¶3** When this litigation was initiated in 1971, the plaintiffs asserted a number of state and federal constitutional challenges to § 13-3603, in addition to those presented in *Roe v. Wade*, 410 U.S. 113 (1973), which was overruled by *Dobbs*. We remand the case to the trial court for consideration of those additional constitutional challenges if the plaintiffs wish to pursue them, and we temporarily extend the existing stay against enforcement of § 13-3603 so that the trial court may determine how to proceed.

## BACKGROUND

**¶4** In 1864, the First Legislative Assembly published a code of laws governing the territory of Arizona. *See* Howell Code (1864). The Howell Code established Arizona's first criminal code, which included constraints on abortion. In 1901, the Twenty-First Legislative Assembly enacted a penal code reiterating the abortion law, dividing criminality between people who facilitate abortions and women who solicit assistance to procure an abortion. *See* Revised Statutes of Arizona, Penal Code §§ 234, 244 (1901). This language was adopted in whole in 1913, after Arizona statehood. *See* Revised Statutes of Arizona, Penal Code § 273 (1913). In 1928, the Arizona Legislature codified abortion criminality in A.R.S. §§ 13-211 to -213.

**¶5** In 1971, Planned Parenthood Center of Tucson, Inc. sued the Attorney General challenging the constitutionality of Arizona's abortion statutes under both the state and federal constitutions. *See Planned Parenthood Ctr. of Tucson, Inc. v. Marks*, 17 Ariz. App. 308, 311–13 (1972) (reversing the trial court's order of dismissal and remanding to proceed to a resolution of the case on its merits). On remand from *Marks*, the trial court ruled Arizona's abortion statutes unconstitutional. *See Nelson v. Planned Parenthood Ctr. of Tucson, Inc.*, 19 Ariz. App. 142, 143 (1973). On appeal, the court of appeals reversed the trial court's ruling, upholding the

constitutionality of the abortion statutes. *Id.* at 150. In 1973, after *Nelson* upheld § 13-211's constitutionality, the United States Supreme Court recognized a federal constitutional right to an abortion in *Roe*. This new right established by *Roe* was inconsistent with § 13-211, so the Arizona Court of Appeals revisited the issue in *Marks*, this time holding the statute unconstitutional because of *Roe* and enjoining enforcement of § 13-211. *Nelson*, 19 Ariz. App. at 152.

¶6　　　　Despite *Nelson*, the Arizona Legislature did not repeal § 13-211. To the contrary, four years after *Roe* and *Nelson*, the legislature recodified § 13-211 as § 13-3603, maintaining the operative language of the statute.[3] 1977 Ariz. Sess. Laws ch. 142, § 99 (1st Reg. Sess.).

¶7　　　　The abortion law's recodification was not the only legislative change made to the abortion statutory scheme. Between 1973 and 2022, and conforming to the federal abortion right established in *Roe*, the Arizona Legislature codified dozens of abortion statutes in Title 36. *See, e.g.*, 1973 Ariz. Sess. Laws ch. 155, § 1 (1st Reg. Sess.); 2022 Ariz. Sess. Laws ch. 105, § 1 (2d Reg. Sess.). To the extent permitted by *Roe* and its progeny, all of these statutes restricted abortions, including adding many procedural requirements for physicians performing abortions.

¶8　　　　In June 2022, the Supreme Court overturned *Roe*, thereby eliminating the federal constitutional right to abortion and returning "the authority to regulate abortion . . . to the people and their elected representatives." *Dobbs*, 597 U.S. at 292.

---

[3] Section 13-3603 provides:

> A person who provides, supplies or administers to a pregnant woman, or procures such woman to take any medicine, drugs or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless it is necessary to save her life, shall be punished by imprisonment in the state prison for not less than two years nor more than five years.

¶9          After *Dobbs*, then-Attorney General Mark Brnovich moved for relief under Arizona Rule of Civil Procedure 60(b)(5)–(6), seeking to set aside the permanent injunction against § 13-3603 imposed in 1973. Planned Parenthood Arizona, Inc. ("Planned Parenthood") opposed the motion, conceding that the original foundation for the injunction—*Roe*—was no longer applicable, but asserting that the injunction must be modified to harmonize § 13-3603 with Title 36, including § 36-2322. *Planned Parenthood Ariz., Inc. v. Brnovich*, 254 Ariz. 401, 403 ¶ 5 (App. 2022).

¶10          The trial court granted the Rule 60 motion, noting that simply "modifying the injunction to harmonize laws not in existence when the Complaint was filed, on grounds for relief not set forth in the Complaint, is procedurally improper." The court further reasoned that "the requested modified injunction which would carve out an exception for physicians, is not consistent with the plain language of A.R.S. § 13-3603 which contains no such exception." Because the legal grounds for the 1973 injunction were overturned by *Dobbs*, the trial court "vacate[d] the judgment in its entirety" to allow full enforcement of § 13-3603. Planned Parenthood appealed and filed an emergency motion to stay the trial court's order pending appeal. The trial court denied the request; however, the court of appeals subsequently granted the stay.

¶11          The court of appeals reversed the trial court's order, concluding, in part, that "[l]icensed physicians who perform abortions in compliance with Title 36 are not subject to prosecution under § 13-3603." *Id.* at 408 ¶ 26. The court of appeals held that the trial court improperly limited review regarding the 1973 injunction, as a proper review would necessitate a consideration of the full statutory scheme, including Title 36. *Id.* at 404–05 ¶¶ 7, 9–10. Accordingly, the court of appeals considered whether § 13-3603 conflicted with Title 36, ultimately finding no "conflict between § 13-3603 and Title 36 that must result in the repeal of either." *Id.* at 405 ¶ 13. Instead, the court of appeals held that the statutes should be harmonized "to conclude the abortion regulations in Title 36 govern," so "physicians who perform abortions in compliance with Title 36 are not subject to prosecution under § 13-3603." *Id.* ¶¶ 10, 13.

¶12          Dr. Eric Hazelrigg ("Hazelrigg") sought timely review of the court of appeals' opinion. We granted review to consider the statutory construction of Arizona's abortion laws post-*Dobbs*, an issue of statewide

importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

### I.

**¶13** We review a question of statutory construction de novo. *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9 (2018).

**¶14** We pause to emphasize the unusual nature of the statutory interpretation in which we must engage. Interpreting and harmonizing multiple statutes concerning the same subject matter is a familiar task. *See, e.g.*, *State v. Santillanes*, 541 P.3d 1150, 1155 ¶ 16 (Ariz. 2024); *Mussi v. Hobbs*, 255 Ariz. 395, 401 ¶ 30 (2023); *State v. Patel*, 251 Ariz. 131, 137 ¶ 24 (2021). Here, we consider a statute that was never repealed—in fact, it was recodified even after it was enjoined—followed by the enactment of a series of statutes regulating the same subject matter in the wake of *Roe*, the Supreme Court decision striking down the original statute. Hence, the question presented is different from those arising in the ordinary statutory interpretation context: whether the later statutes "repeal or otherwise limit" the earlier statute. Neither party could identify precedent squarely resolving such an unusual circumstance. Thus, we examine the later-adopted Title 36 statutes to determine whether they repealed or limited § 13-3603, or instead merely restricted abortions to the extent possible so long as *Roe* prevented enforcement of § 13-3603.

### A.

**¶15** We begin by setting out the rules of statutory construction that guide our analysis. We interpret statutes "in view of the entire text, considering the context and related statutes on the same subject." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019). Clear and unequivocal language determines a statute's meaning, reading each word, phrase, clause, and sentence in such a way to ensure no part of the statute is void or trivial. *See Janson ex rel. Janson v. Christensen*, 167 Ariz. 470, 471 (1991). Under this plain meaning analysis, "[w]e look first to the language of the provision, for if the [statutory] language is clear, judicial construction is neither required nor proper." *Perini Land & Dev. Co. v. Pima County*, 170 Ariz. 380, 383 (1992); *see*

*also SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480 ¶ 8 (2018). This analytical approach is premised on foundational trust in legislative competency, and this Court "presume[s] that the legislature knows the existing laws when it enacts or modifies a statute." *State v. Garza Rodriguez*, 164 Ariz. 107, 111 (1990).

**¶16** Statutory terms must be given effect "in accordance with their commonly accepted meanings, 'unless the legislature has offered its own definition of the words or it appears from the context that a special meaning was intended.'" *State v. Reynolds*, 170 Ariz. 233, 234 (1992) (internal citation omitted) (quoting *Mid Kan. Fed. Sav. & Loan Ass'n of Wichita v. Dynamic Dev. Corp.*, 167 Ariz. 122, 128 (1991)). In determining "commonly accepted meanings," "we may refer to established and widely used dictionaries." *Id.*; *Special Fund Div. v. Indus. Comm'n*, 232 Ariz. 110, 113 ¶ 12 (App. 2013). We also may consider a statement of legislative intent, including a construction provision, in discerning the meaning of a statute. *See S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023) (noting that we determine the meaning of a statute "according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise"); *Aros v. Beneficial Ariz., Inc.*, 194 Ariz. 62, 66 (1999). Therefore, we read a statute in the context of the law that grants it authority. *Cf. S. Ariz. Home Builders Ass'n*, 254 Ariz. at 286 ¶ 31.

**¶17** If the statutory language is ambiguous—if "it can be reasonably read in two ways"—we may use alternative methods of statutory construction, including examining the rule's historical background, its spirit and purpose, and the effects and consequences of competing interpretations. *State v. Salazar-Mercado*, 234 Ariz. 590, 592 ¶ 5 (2014); *State v. Aguilar*, 209 Ariz. 40, 47 ¶ 23 (2004). "A statute is not ambiguous merely because the parties disagree about its meaning," it is ambiguous if the "meaning is not evident after examining the statute's text as a whole or considering statutes relating to the same subject or general purpose." *Glazer v. State*, 244 Ariz. 612, 614 ¶ 12 (2018).

**B.**

**¶18** We first address Planned Parenthood's claim that Title 36 creates a right to an abortion or otherwise independently authorizes elective abortion up to fifteen weeks' gestation. Although Planned

Parenthood conceded at oral argument that Title 36 does not create a right to abortion, it maintained its argument that § 36-2322 codifies permissive authorization to perform abortions such that it repeals or restricts § 13-3603. Planned Parenthood and Hazelrigg's Title 36 arguments center almost entirely on § 36-2322.

¶19        Section 36-2322 provides, in relevant part:

A. Except in a medical emergency, a physician may not perform, induce or attempt to perform or induce an abortion unless the physician or the referring physician has first made a determination of the probable gestational age of the unborn human being and documented that gestational age in the maternal patient's chart and, if required, in a report required to be filed with the department . . . .

B. Except in a medical emergency, a physician may not intentionally or knowingly perform, induce or attempt to perform or induce an abortion if the probable gestational age of the unborn human being has been determined to be greater than fifteen weeks.

¶20        Planned Parenthood argues that, in order to statutorily restrict the availability of abortion, specifically through § 36-2322's use of the terms "except" and "unless," Title 36 must implicitly and necessarily authorize the procedure because "unless" is a conjunction meaning "except on the condition that" or "without the accompanying circumstances or condition that." *See Unless*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/unless (last visited Mar. 20, 2024). Accordingly, Planned Parenthood embraces the court of appeals' holding that § 36-2322 "prohibits abortions except those it allows—that is, it permits a licensed physician to perform abortions in emergency situations and elective abortions if the physician has determined the fetus's gestational age is fifteen weeks or less and otherwise has complied with Title 36." *Brnovich*, 254 Ariz. at 406 ¶ 19 n.8.[4]

---

[4] Planned Parenthood further contends that § 36-2322 should be read to exempt "medical emergency" situations from the gestational age

¶21 Planned Parenthood is correct that if it were a standalone statute, by its plain terms, § 36-2322's proscription on elective abortion after fifteen weeks' gestation logically implies that abortion is otherwise permissible. But its interpretation that the purpose and effect of "except" and "unless" is to statutorily authorize certain abortions is not the only reasonable one. Reasonable minds could differ about whether "except" and "unless" independently statutorily authorize conduct not proscribed or, alternatively, merely qualify the circumstances under which a physician may be penalized under § 36-2322 (in other words, that a physician may not be penalized under § 36-2322 when the "except" and "unless" provisions apply).[5] This textual ambiguity — one interpretation which concludes that § 36-2322 independently authorizes conduct not proscribed, thus repealing § 13-3603, and the other which posits that § 36-2322 simply qualifies the circumstances under which a physician may be penalized, thus leaving § 13-3603 undisturbed — generates two possible conclusions about § 36-2322's effect on § 13-3603.

¶22 Section 36-2322's text in isolation, therefore, does not resolve the fundamental issue before us: whether the statute creates independent statutory authority for abortion intended to repeal or restrict § 13-3603 or merely acknowledges the existence of a contemporaneous federal constitutional right to abortion under *Roe* at the time of its passage. Notably, § 36-2322's text does not address its effect on § 13-3603. Given the competing plausible textual readings of § 36-2322, which create ambiguity concerning the statute's effect on § 13-3603, any interpretation of the statute that ignores or minimizes the impact of *Dobbs*' disavowal of a federal constitutional abortion right runs headlong into the construction provision of Senate Bill 1164 ("S.B. 1164") — the genesis of § 36-2322 and part of what

---

requirement and to criminalize abortions after fifteen weeks. This interpretation is reasonable, but we do not address it further because it has no bearing on whether the statute creates an independent statutory authorization for physicians to perform elective abortions before fifteen weeks' gestation that overrides § 13-3603, which is the issue before us.

[5] Penalties for violating § 36-2322 include a criminal class 6 felony conviction and medical license suspension or revocation. *See* A.R.S. §§ 36-2324(A), -2325(A).

11

the legislature enacted. We must interpret the statute in its proper context. This requires us to reconcile the legislature's construction provision, which specifically preserves § 13-3603, and the text of § 36-2322, which is silent on, and ambiguous as to, its effect on § 13-3603. *See Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017); *S. Ariz. Home Builders Ass'n*, 254 Ariz. at 286 ¶ 31.

## C.

¶23        To determine if Title 36 creates a right to abortion, or otherwise provides independent statutory authority to perform the procedure, as Planned Parenthood contends, we must consider S.B. 1164's construction provision.

¶24        The legislature included a two-part construction provision in S.B. 1164, expressing its unequivocal intent that, in restricting elective abortion to fifteen weeks' gestation, it did not create, recognize, or expand a right to an abortion, nor did it repeal § 13-3603's proscription on elective abortion:

> This act does not:
>
> 1. Create or recognize a right to abortion or alter generally accepted medical standards. The Legislature does not intend this act to make lawful an abortion that is currently unlawful.
>
> 2. Repeal, by implication or otherwise, section 13-3603, Arizona Revised Statutes, or any other applicable state law regulating or restricting abortion.

*See* 2022 Ariz. Sess. Laws ch. 105, § 2 (2d Reg. Sess.). The construction provision is part of the bill that legislators have before them and approve, and has the same force of law as codified law. *See* The Arizona Legislative Bill Drafting Manual 2021–2022 at 7.

¶25        We must consider the legislature's construction provision in S.B. 1164 when discerning the act's meaning because it is part of the bill the legislature approved. *See, e.g., State ex rel. Ariz. Dep't of Revenue v. Tunkey*, 254 Ariz. 432, 438 ¶ 27 (2023) (Bolick, J., concurring) ("If the legislature agrees on findings, purposes, or definitions, it becomes our duty to

ascertain statutory meaning through those prisms."); *cf. S. Ariz. Home Builders Ass'n*, 254 Ariz. at 286 ¶ 31; *see also* Kevin M. Stack, *The Enacted Purposes Canon*, 105 Iowa L. Rev. 283, 304–05 (2019); Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 232 (2012) ("Legal drafters have the power . . . to limit the implications of their terms . . . .").

¶26        Before we consider S.B. 1164's construction provision, we first address Planned Parenthood's contention that § 36-2322 does not create a right to abortion, but rather "allows" the procedure and, thus, provides independent statutory authorization for it.  We reject this distinction.  As Hazelrigg notes, because S.B. 1164 does not define "right," we may rely on dictionary definitions. *See Special Fund Div.*, 232 Ariz. at 113 ¶ 12.  A "right" is a "privilege . . . secured . . . by law." *Right*, Black's Law Dictionary (11th ed. 2019).  Here, we disagree that a statute that expressly disclaims creation of a right may be read to simultaneously create an independent statutory authorization akin to a right.  Both describe a privilege secured by law.

¶27        Planned Parenthood argues that S.B. 1164's construction provision against repeal of § 13-3603 "or any other applicable state law regulating or restricting abortion" clarifies the legislature's intent to give every Title 36 provision effect, and any repeal of § 36-2322 would contravene this express legislative provision because the statute is part of Title 36.  In other words, the legislature's construction provision was designed to foreclose a reading of S.B. 1164 that would result in its own demise.

¶28        This interpretation does not withstand scrutiny.  First, it is inconsistent with the plain meaning and manifest purpose of the construction provision—to clarify that § 36-2322's enactment does not "create or recognize a right to abortion," repeal the statutory ban on elective abortion, or repeal "any other applicable state law *regulating* or *restricting* abortion." *See* 2022 Ariz. Sess. Laws. ch. 105, § 2 (2d Reg. Sess.) (emphasis added).  Neither the construction provision's text, nor its context, suggest that the legislature intended to create an independent statutory authority for abortion that would repeal § 13-3603.  To do so would contravene its express preservation of § 13-3603's ban on elective abortion, which the legislature neither repealed nor amended in any manner, and any other applicable law that *regulated* or *restricted* abortion.  Second, any suggestion that the legislature crafted the construction provision to clarify its intent not

to repeal § 36-2322 by virtue of its own passage is absurd. *See 4QTKIDZ, LLC v. HNT Holdings, LLC*, 253 Ariz. 382, 385 ¶ 5 (2022) (noting that the plain, clear and unambiguous text of a statute controls unless it results in an absurdity). The construction provision must be read as reflecting the legislature's intent not to repeal *other* laws akin to § 13-3603, *not* § 36-2322 itself.

¶29        A cursory review of the construction provision that the legislature "did not intend [S.B. 1164] to make lawful an abortion that is *currently* unlawful" seemingly engenders confusion, but its context and logic instead yield clarity. This provision can reasonably bear only one meaning: the legislature did not intend the act to codify an independent statutory right to an elective abortion before fifteen weeks' gestation or otherwise repeal any other abortion laws more restrictive than S.B. 1164. Any other reading is implausible because, at the time of its passage, S.B. 1164 merely sought to restrict a federal constitutional right to abortion that the legislature was powerless to abolish. Under no scenario could the legislature's *restriction* of a broader abortion right be construed to "make lawful an abortion that is currently unlawful" *unless* the act was misinterpreted to (1) override § 13-3603, the only provision in Arizona or federal law at the time that made an elective abortion before fifteen weeks' gestation "currently unlawful" or (2) otherwise repeal more restrictive abortion statutes.[6] Thus, the provision must mean that the legislature "d[id] not intend [S.B. 1164] to make lawful an abortion that is currently unlawful [under § 13-3603 or any other statute more restrictive than S.B. 1164]." This is the only interpretation that is internally consistent with, and does not defeat, the remainder of S.B. 1164's construction provision. And it helps that the legislature identified precisely which statute it meant to preserve: § 13-3603.

---

[6] S.B. 1164's ban on elective abortion after fifteen weeks' gestation was the most temporally restrictive abortion statute. This construction provision conceivably may also apply to other non-temporal statutory abortion restriction statutes. *See, e.g.*, A.R.S. § 36-2152(A) (requiring parental consent or judicial authorization for abortions on minors); A.R.S. § 13-3603.02(A)(1) (prohibiting physicians from performing an abortion when a physician knows the purpose is based on genetic abnormality or race or gender).

¶30 Hazelrigg argues, and we agree, that the court of appeals misconstrued the legislature's express intent embodied in S.B. 1164 by holding that the statutory scheme demonstrates that the legislature enacted S.B. 1164 with the design "to restrict—but not to eliminate—elective abortions." *Brnovich*, 254 Ariz. at 406 ¶ 16. That was the statute's effect, but the court of appeals divines a legislative purpose in a vacuum. At the time of S.B. 1164's passage when *Roe* was still in effect, the legislature was devoid of authority to ban elective abortions without running afoul of the Supremacy Clause. Indeed, the legislature's previous attempt to restrict elective abortion after twenty weeks' gestation was enjoined. *See Isaacson v. Horne*, 716 F.3d 1213, 1231 (9th Cir. 2013). It is no surprise that the legislature merely intended "to restrict—but not to eliminate—elective abortions." It could do no more. Further, at that time, abortion up to fifteen weeks' gestation was already legal in Arizona, so there was no reason for the legislature to codify in statute a right that already existed under federal constitutional law.

¶31 In context, S.B. 1164 was not a legislative attempt to preserve a right to abortion in Arizona; instead, it was a significant legislative restriction on elective abortion. It is a strained interpretation, indeed, that transforms S.B. 1164—a legislative limitation of elective abortion and an express preservation of a statutory ban on all elective abortions—into an independent statutory authority for elective abortion that overrides § 13-3603 and survives *Roe*'s demise. *See, e.g.*, *Roberts v. State*, 253 Ariz. 259, 267 ¶ 25 (2022) (noting that the "historical sequence" of statutory enactments and judicial decisions may inform statutory interpretation). We do not interpret the act to negate its own purpose. *See King v. Burwell*, 576 U.S. 473, 493 (2015).

## D.

¶32 The court of appeals and Planned Parenthood's interpretation of S.B. 1164 is particularly dubious in light of Arizona's additional statutory provision that our laws "shall be interpreted and construed to acknowledge, on behalf of an unborn child at every stage of development, all rights, privileges and immunities available to other persons, citizens and residents of this state, subject only to the Constitution of the United States and decisional interpretations thereof by the United States Supreme Court."

15

A.R.S. § 1-219(A).[7]  This statute further illustrates that access to abortion in Arizona is, and remains, confined to a federal constitutional right beyond the reach of Arizona's legislature.  Section 1-219(A), left untouched by § 36-2322, establishes the public policy of the state, provides additional interpretive guidance, and belies the notion that the legislature intended to create independent statutory authority for elective abortion.

¶33        Moreover, S.B. 1164's construction provision mirrors provisions in numerous other bills codified in Title 36, demonstrating the consistency, gravity, and clarity of the legislature's intent not to independently grant a right or authorize access to abortion.  *See, e.g.*, 2009 Ariz. Sess. Laws ch. 172, § 6 (1st Reg. Sess.); 2010 Ariz. Sess. Laws ch. 111, § 1 (2d Reg. Sess.); 2011 Ariz. Sess. Laws ch. 9, § 4 (1st Reg. Sess.); 2011 Ariz. Sess. Laws ch. 10, § 8 (1st Reg. Sess.); 2012 Ariz. Sess. Laws ch. 250, § 11 (2d Reg. Sess.); 2021 Ariz. Sess. Laws ch. 286, § 17 (1st Reg. Sess.).

**E.**

¶34        Planned Parenthood argues that the legislature's failure to include an express statutory trigger provision repealing § 36-2322 upon *Roe*'s reversal evinces the legislature's implicit intent to create an independent statutory authority for elective abortion up to fifteen weeks' gestation that effectively repeals § 13-3603.  Planned Parenthood emphasizes the import of the legislature's omission because S.B. 1164 otherwise mirrors "Mississippi's 15-week law," which included an express statutory trigger.  *See* Miss. Code Ann. § 41-41-191(8) (2018).  We are unpersuaded.

¶35        Planned Parenthood and the dissent make much of the fact that Mississippi's statutes, which largely parallel Arizona's statutes at issue here, contain a "trigger provision" that specifies applicability of certain abortion provisions only in the event that *Roe* is overturned, whereas

---

[7]  Section 1-219(A) is preliminarily enjoined in federal court from enforcement "as applied to abortion care that is otherwise permissible under Arizona law."  *Isaacson v. Brnovich*, 610 F. Supp. 3d 1243, 1257 (D. Ariz. 2022).  Thus, the injunction has no bearing on this Court's authority to consider § 1-219(A) in interpreting the statutes before us or to determine whether abortion is permissible under Arizona law.

Arizona's do not. Under the divergent circumstances of the two state laws, the difference is of no consequence.

¶36 In 2007, Mississippi enacted Mississippi Code Annotated § 41-41-45(2), which provides in relevant part: "No abortion shall be performed or induced in the State of Mississippi, except in the case where necessary for the preservation of the mother's life or where the pregnancy was caused by rape." It was *this* law that included the express trigger provision, which provided that it would take effect ten days following a determination by the state attorney general that *Roe* was overturned and the statute would be constitutional. 2007 Miss. Laws ch. 441, § 6. Including an express trigger provision made sense given that *Roe* was in effect when Mississippi Code Annotated § 41-41-45 was enacted.

¶37 Of course, § 13-3603, the Arizona near-analog to § 41-41-45, does not have a trigger provision, for a simple and obvious reason: it was first enacted 109 years before *Roe*. Its subsequent recodifications, even after *Roe*, make clear the legislature's determination to keep it on the books. A trigger provision would serve utterly no purpose. And even the dissent acknowledges that § 13-3603 has never been repealed and, following *Dobbs*, should be given effect. *Infra* ¶¶ 65, 88–91.

¶38 Mississippi subsequently enacted, among other laws restricting abortion, a fifteen-week gestational limit on abortions in 2018. Miss. Code Ann. § 41-41-191. This statute, like the similar § 36-2322(B), does *not* contain an express trigger provision. Rather, it contains a subsection entitled "Construction," which provides in relevant part: "Nothing in this section shall be construed as creating or recognizing a right to abortion or as altering generally accepted medical standards. It is not the intention of this section to make lawful an abortion that is otherwise unlawful," and "[a]n abortion that complies with this section, but violates any other law is unlawful." Miss. Code Ann. § 41-41-191(8).

¶39 The bulk of this language is virtually identical to the construction provision in Arizona law—except that the Arizona language explicitly identifies one statute in particular that it does not "[r]epeal by implication or otherwise": § 13-3603. Mississippi's fifteen-week provision that "[a]n abortion that complies with [it], but violates any other law is unlawful"—which is absent from § 36-2322(B)'s construction provision—is

17

not dispositive, as the dissent contends. *Infra* ¶ 96. Just as the Mississippi fifteen-week law implicitly yields to the enforceability of § 41-41-45, Arizona's fifteen-week law—§ 36-2322(B)—conforms its application to § 13-3603's enforceability. To the extent the dissent suggests such language and construction serve as a trigger provision in the Mississippi statute, *infra* ¶¶ 94–95, it would obviously play the same role in the Arizona statute—indeed, even more so, by identifying a particular statute that is left intact.

**¶40**      Regardless, the absence of an express trigger provision is not dispositive here. We typically do not infer legislative intent from silence. *Cf. Sw. Paint & Varnish Co. v. Ariz. Dep't of Env't Quality*, 194 Ariz. 22, 25 ¶ 21 (1999) (noting that legislative acquiescence by silence is "limited to instances in which the legislature has considered and declined to reject the relevant judicial interpretation"). Second, in light of Title 36's genesis as the statutory mechanism to restrict and regulate abortion in response to *Roe*, *Dobbs*' elimination of a federal constitutional right to abortion removed the sole authority for elective abortion in Arizona necessitating many Title 36 regulations, including § 36-2322. Third, although the legislature did not include the express trigger provision that appears in Mississippi's law, it was not silent on the issue. Despite the dissent's requirement of an express trigger provision, *infra* ¶¶ 93–96, we conclude that the legislature made its intent known. The legislature's unwavering and unqualified affirmative maintenance of a statutory ban on elective abortion since 1864 (albeit enjoined since 1973), S.B. 1164's construction provision that the legislature did not intend to repeal § 13-3603 in passing § 36-2322, and § 1-219(A)'s public policy pronouncement that the rights of the "unborn child" were limited only by the federal Constitution and the Supreme Court's interpretation of it, effectively constitute a discernible comprehensive trigger provision in the event of *Roe*'s demise.

**F.**

**¶41**      Planned Parenthood urges that we divine legislative intent from statements of "numerous public officials," namely the former Governor, the Maricopa County Attorney, and the former Attorney General, concerning the meaning of § 36-2322. This reed is too thin to bear the interpretive weight Planned Parenthood places upon it. "We believe the best policy is not to consider nonlegislators' statements to determine the

legislature's intent concerning the specific application of a proposed statute, unless the circumstances provide sufficient guarantees that the statements reflect legislators' views." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 270 (1994). Here, we do not find these expressed opinions particularly illuminating or relevant as to legislative intent or the meaning of § 36-2322. As Hazelrigg notes, legislative and non-legislative statements support both parties' interpretations. At most, conflicting statements made by public officials illustrate the novelty of the interpretative task presented to us by the legislature.

## G.

¶42 Planned Parenthood contends that, like the court of appeals, we must harmonize §§ 13-3603 and 36-2322 to give effect to each. *See, e.g.*, *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 329 ¶ 11 (2001) ("When two statutes appear to conflict, we will attempt to harmonize their language to give effect to each."). We disagree. Our conclusion that the legislature did not intend to create a privilege secured by law to obtain or perform an abortion obviates the need to harmonize §§ 13-3603 and 36-2322. Harmonization between these laws may be accomplished only by repealing § 13-3603 in contravention of the legislature's express intent and engaging in untenable statutory interpretation such as excising physicians from the plain meaning of "person" in § 13-3603, defined as "a human being" in A.R.S § 13-105(30). And indeed, despite purporting to harmonize the statutes, the dissent's treatment of § 13-3603 all but nullifies it. We decline to do so. *See Schatz v. Allen Matkins Leck Gamble & Mallory LLP*, 198 P.3d 1109, 1120 (Cal. 2009) ("Courts 'will infer the repeal of a statute only when . . . a subsequent act of the legislature clearly is intended to occupy the entire field covered by a prior enactment.'" (alteration in original) (citation omitted)).

¶43 *Roe*'s recognition of a right to an abortion was not absolute, and many states—including Arizona—legislatively restricted the time, place, and manner in which an abortion could be performed. Title 36 and the corresponding construction provisions were passed under *Roe*'s authority, and thus, must be interpreted through the mutating lens of the Supreme Court's abortion jurisprudence. *See Aguilar*, 209 Ariz. at 47 ¶ 23. Through this lens it becomes clear that Title 36 is merely Arizona's statutory mechanism for restricting and regulating *Roe*'s abortion right. And, as

Planned Parenthood concedes, Arizona has never independently created a statutory right to abortion. We will not "amend a statute judicially [nor] read implausible meaning into express statutory language" given the absence of an abortion right in Arizona jurisprudence. *Kyle v. Daniels*, 198 Ariz. 304, 306 ¶ 7 (2000). Therefore, because the federal constitutional right to abortion that overrode § 13-3603 no longer exists, the statute is now enforceable, prospectively prohibiting abortion unless necessary to save a woman's life. *See* § 13-3603.

## II.

**¶44**  We next consider the viability of the remaining portions of Title 36 in light of Planned Parenthood's contention that simultaneous enforcement of § 13-3603 and Title 36 implicates physicians' due process right to notice of potential criminal and regulatory liability for abortion-related conduct.

## A.

**¶45**  We first clarify the effect of our Opinion on Title 36. Any portion of Title 36 solely applicable to elective abortion under the defunct federal constitutional right arguably may no longer be operative simply for want of purpose; what does not exist cannot be regulated. We refrain, however, from crafting an advisory opinion as to the operability of any Title 36 provision not squarely before us. The enforceability of Title 36 provisions must be revisited by the legislature or adjudicated by the courts as controversies arise.

**¶46**  Section 36-2322, however, is before us. We hold that it remains enforceable even though it was enacted solely to curtail the federal abortion right by criminalizing physicians' performance of abortion after fifteen weeks' gestation and adding other regulatory requirements concerning abortions performed due to "a medical emergency." §§ 36-2322(C)(1)–(7), -2324(A). Although we conclude that the legislature enacted § 36-2322 to curtail elective abortion in lieu of enforcement of § 13-3603 that was then-enjoined under *Roe*, we do not attempt to—nor have we been requested to—divine the legislature's intent in passing § 36-2322's additional substantive criminal and regulatory provisions that exceed the scope of § 13-3603's ban on elective abortion. If, in light of

20

§ 13-3603's enforceability, a decision is to be made to rescind any provision in § 36-2322, it is the legislature's prerogative.

¶47 Various other Title 36 provisions, in addition to § 36-2322, regulating abortion-related conduct and entailing criminal and regulatory sanctions remain relevant when § 13-3603's elective abortion ban is enforceable. For example, Title 36's abortion licensing requirements, A.R.S. § 36-449.02, reporting requirements, A.R.S. §§ 36-2161 to -2164, and emergency consent requirements, A.R.S. § 36-2153(C), may apply to abortions necessary to save a woman's life. Moreover, other statutory provisions such as A.R.S. § 36-2302, which proscribes, subject to statutory exceptions, "use of a human fetus or embryo . . . [resulting from an abortion] for animal or human research," remain relevant because they may implicate all abortion-related activity.

**B.**

¶48 Planned Parenthood contends that § 13-3603 and Title 36's abortion-related criminal and regulatory provisions cannot coexist without implicating due process because the overlapping laws do not adequately apprise physicians of the contours of their criminal liability. We note that Planned Parenthood's primary due process concern centers on the co-existence of criminal provisions in §§ 13-3603 and 36-2322, but its due process argument extends to § 13-3603's potential overlap with other Title 36 criminal provisions.

¶49 *United States v. Batchelder*, 442 U.S. 114 (1979), a unanimous Supreme Court decision by Justice Thurgood Marshall, deals with precisely this question. In *Batchelder*, the Court rejected a claim that two federal criminal statutes could not coexist because Congress intended to enact two independent gun control statutes, each enforceable on its own terms. 442 U.S. at 123–24 ("This Court has long recognized that when an act violates more than one criminal statute," the decisions of "[w]hether to prosecute and what charge[s] to file . . . generally rest in the prosecutor's discretion."). The Court determined that one statute cannot be interpreted as implicitly repealing another statute merely because a defendant's conduct might violate both statutes. *Id.* at 122. The Court reasoned that, "it is 'not enough to show that the two statutes produce differing results when applied to the same factual situation.'" *Id.* (quoting *Radzanower v. Touche Ross & Co.*, 426

21

U.S. 148, 155 (1976)). "Rather, the legislative intent to repeal must be manifest in the 'positive repugnancy between the provisions.'" *Id.* (quoting *United States v. Borden Co.*, 308 U.S. 188, 199 (1939)).

**¶50** Our jurisprudence accords with *Batchelder*. We have consistently upheld the principle that the legislature may proscribe the same conduct through multiple laws and our criminal statutes are replete with examples of multiple laws applying to the same conduct. *See, e.g.*, A.R.S. § 13-116 ("An act or omission which is made punishable in different ways by different sections of the laws may be punished under both . . . ."); *State v. Jones*, 235 Ariz. 501, 504 ¶ 13 (2014) ("The same conduct may result in different offenses . . . ."); *Anderjeski v. City Court of Mesa*, 135 Ariz. 549, 550 (1983) ("Although arising out of one act, the statutes describe two separate and distinct offenses."); *State v. Culver*, 103 Ariz. 505, 507–08 (1968) (holding criminal statutes merely prohibiting the same conduct did not conflict where there was no positive repugnancy between the two laws); *State v. O'Brien*, 123 Ariz. 578, 583–84 (App. 1979) ("A specific statute does not supplant an earlier general statute unless all provisions are covered; that is, where the specific statute is narrower, the general one is not repealed. Where a single act violates more than one statute and there is no evidence of legislative intent to repeal one of them, the government has the option of prosecuting under either." (internal citations omitted)); *State v. Lopez*, 174 Ariz. 131, 143 (1992) ("When conduct can be prosecuted under two or more statutes, the prosecutor has the discretion to determine which statute to apply."). "So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied." *Batchelder*, 442 U.S. at 123.

**¶51** Here, § 13-3603 prohibits "a person" from performing any abortion "unless it is necessary to save [a woman's] life" and punishes a violation of the statute "by imprisonment in the state prison for not less than two years nor more than five years." Section 36-2322(B), "[e]xcept in a medical emergency," proscribes a physician from performing an abortion after fifteen weeks' gestation and deems a violation of the statute a class 6 felony under § 36-2324. Thus, as in *Batchelder*, these statutes create overlapping criminal liability, but they also on their face "clearly define the conduct prohibited and the punishment authorized." 442 U.S. at 123. The

fact there is overlap between the two statutes does not violate due process notice requirements. *Id.*

¶**52**        In addition to overlapping criminal statutes, Planned Parenthood argues that § 13-3603's criminal provision and Title 36's regulatory scheme present physicians performing abortions with an unnavigable array of criminal and regulatory requirements. We disagree. Multi-title statutory regulation of conduct, particularly business and professional activity, is hardly unique to abortion. For example, employers confronting marijuana impairment at work are tasked with consulting both Title 23, Chapter 2, Article 14—the Drug Testing of Employees Act—and Title 36, Chapter 28.1—the Arizona Medical Marijuana Act. And, as Hazelrigg notes, doctors, lawyers, securities brokers, and commodities traders, among other professions, are also permissibly subject to overlapping criminal, civil, and regulatory laws. As long as these legal requirements clearly define prohibited conduct and the sanction, they do not implicate due process notice requirements. *See Batchelder*, 442 U.S. at 123. We do not conclude that a physician's regulatory compliance burden in this arena is constitutionally distinguishable from any other regulated professional's legal obligations.

¶**53**        In light of this Opinion, physicians are now on notice that all abortions, except those necessary to save a woman's life, are illegal, *see* § 13-3603, and that additional criminal and regulatory sanctions may apply to abortions performed after fifteen weeks' gestation, *see* §§ 36-2322, -2324, -2325. Physicians are tasked with otherwise comporting their conduct with Title 36's requirements. *See* § 13-116; *see also Lopez*, 174 Ariz. at 143. The application of § 13-3603 and Title 36 to physicians' conduct does not facially implicate constitutional due process concerns.[8] Our holding, of course, does not foreclose a physician from raising an as-applied due process

---

[8] Pima County Attorney's Office argues that § 13-3603's "necessary to save [a pregnant woman's] life" exception to the ban on abortion "would violate due process because it does not provide physicians clarity on how they should conform their conduct to the law in life- and health-threatening situations." We decline to address this argument here because it is beyond the scope of the issue before us, a factual record was not developed in the trial court, and neither the trial court nor the court of appeals ruled on this issue. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 503 (1987).

challenge on facts, and with a developed factual record, that are not before us.

**III.**

**¶54**         The dissent contends that the majority "errs by finding § 36-2322(B) ambiguous and then using the construction [provision] to interpret the statute in a way unsupported by its plain textual meaning," *infra* ¶ 73, and also misplaces our focus "on whether § 36-2322(B) grants an affirmative right to an abortion akin to *Roe*'s recognition of a constitutional right," *infra* ¶ 76. We address these points in turn.

**¶55**         We begin with the dissent's assertion that § 36-2322(B) is unambiguous, which forecloses any consideration of Arizona's abortion statutory history or the legislature's clear statements of the statute's intended effect on § 13-3603. *Infra* ¶ 73. The dissent misconstrues the nature of the ambiguity. There is no dispute that § 36-2322(B) unambiguously criminalizes physicians' performance of elective abortion after fifteen weeks' gestation. But the statute is silent and otherwise ambiguous as to its intended effect on § 13-3603—the sole issue before us. *See* Part I, B ¶¶ 21–22. Invocation of a menagerie of rules of statutory construction, *infra* ¶ 80, with which we agree and follow when applicable, does not change the fact that § 36-2322(B) is ambiguous most importantly not for what it says, but for what it does not say. *See, e.g.*, *State v. Sweet*, 143 Ariz. 266, 269–70 (1985) ("The problem in interpreting the statute at issue is not that certain words or groups of words have more than one meaning, but it is the failure to include necessary words which causes confusion as to the scope of the statute."). Because the statute's text does not reveal its effect on § 13-3603, it is ambiguous. *Id.* And because it is ambiguous, we may consider the construction provision in determining § 36-2322(B)'s effect on § 13-3603. *See Sakrison v. Pierce*, 66 Ariz. 162, 172 (1947) (noting that the policy section of an act "would be controlling" in interpreting "an operative portion of the statute that was ambiguous or of doubtful meaning or application").

**¶56**         Given § 36-2322(B)'s ambiguity concerning its effect on § 13-3603, we turn to the dissent's curious claim that we misplace our focus "on whether § 36-2322(B) grants an affirmative right to an abortion akin to *Roe*'s recognition of a constitutional right." *Infra* ¶ 76. The dissent subtly,

but critically, misconstrues our reasoning. To clarify, the issue before us is not whether, in the abstract, abortion not expressly proscribed by statute is legally permissible; it is whether § 36-2322(B)'s proscription on elective abortion after fifteen weeks' gestation created statutory authorization for abortion *before* fifteen weeks' gestation that repeals or limits § 13-3603's total ban on elective abortions. Viewed through this lens, the dissent's unremarkable claim that "[p]roscribing conduct does not require the legislature to grant people an affirmative right to engage in conduct falling outside the proscription," *infra* ¶ 76, the corollary observation that "the legislature does not affirmatively grant a right by decriminalizing conduct," *infra* ¶ 78 (emphasis omitted), and an illustration of these principles involving driving under the speed limit, *infra* ¶ 77, have no import. Here, our focus on whether § 36-2322(B)—in context rather than in a legal and historical vacuum—grants an affirmative right or statutory authorization or otherwise effectively repeals § 13-3603 is *the* question before us.

¶57 The dissent relies on *United States v. Vuitch*, 402 U.S. 62 (1971), a pre-*Roe* case, for the proposition that physicians may perform "abortions that are not expressly outlawed." *Infra* ¶ 71. *Vuitch* is distinguishable; it does not elucidate the issue before us. In *Vuitch*, the Supreme Court, in upholding the District of Columbia's abortion ban, noted that abortions performed pursuant to the statutory exception for abortions necessary to preserve a mother's life or health were "legal." 402 U.S. at 69–71. The Court's recognition that an act is legal if performed pursuant to an express statutory exception to a proscribed act is unsurprising, but it has no relevance here. As noted, the issue in this case is not whether an abortion not expressly proscribed by law may be performed lawfully, it is whether § 36-2322(B)'s proscription on elective abortion after fifteen weeks' gestation created statutory authorization to perform other abortions in violation of an existing statute, thus repealing or limiting § 13-3603. *Vuitch* simply did not address the effect of a law on a pre-existing statute.

¶58 The dissent, employing the general/specific canon, contends that § 36-2322(B) merely operates as an exception to § 13-3603 and "does not repeal any aspect of § 13-3603" because it "negates § 13-3603 only in its application to the situation that § 36-2322(B) covers." *Infra* ¶¶ 87–89. Not so. "Repeal" means to "abrogat[e] . . . an existing law." *Repeal*, Black's Law Dictionary (11th ed. 2019). As the dissent acknowledges, "a physician who performs an abortion in compliance with § 36-2322(B) nevertheless violates

§ 13-3603." *Infra* ¶ 85. The dissent's interpretation renders lawful what is a crime under § 13-3603. Thus, under the dissent's approach, § 36-2322(B) effectively repeals and supplants § 13-3603. The dissent's reasoning is tenable only to the extent that it discounts statutory history, the legislature's public policy pronouncement in § 1-219(A), and the construction provision that the legislature did not intend § 36-2322(B) to "repeal, by implication or otherwise, section 13-3603." Although the dissent asserts that we elevate the construction provision over the statute's text in discerning the legislature's intent concerning § 36-2322(B)'s ambiguous effect on § 13-3603, *infra* ¶ 79, we decline to apply the general/specific canon to ignore the legislature's plain statement in the approved bill that it did not intend for § 36-2322(B) to repeal § 13-3603, precisely the result obtained under the dissent's statutory harmonization analysis.

**¶59** The dissent notes that the legislature's statement of intent concerning § 36-2322(B) described its objective "to restrict the practice of nontherapeutic or elective abortion to the period up to fifteen weeks of gestation," but that, in the dissent's view, "[n]othing suggests an intent to make abortions permitted under § 36-2322(B) unlawful upon *Roe*'s demise." *Infra* ¶ 105. The legislature's statement of intent and construction provision are not logically inconsistent. The intent statement expressed what the legislature intended § 36-2322(B) to do—restrict elective abortion after fifteen weeks' gestation through penalties specified in Title 36—and the construction provision expressed what the legislature did *not* intend the law to do—repeal § 13-3603, "by implication or otherwise."

**¶60** Finally, the dissent invokes the adage that the legislature does not ordinarily "hide elephants in mouseholes," which means that the legislature "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). *Infra* ¶ 66. The dissent asserts that *Whitman* supports its contention that the Arizona Legislature could not have intended that, if *Roe* was overruled, the state would enforce § 13-3603, which was enjoined solely due to *Roe*'s recognition of a federal constitutional right to abortion. *Infra* ¶ 66. But here, the elephant is not hidden in a mousehole; rather, the elephant is standing in the room, albeit perhaps in a corner, despite the dissent's refusal to acknowledge it.

¶61        We do not, as the dissent implies, rest our conclusion solely on the construction provision.  In interpreting § 36-2322(B)'s ambiguity on its effect on § 13-3603, we consider Title 36's genesis as the statutory mechanism to restrict and regulate abortion in response to *Roe*, the legislature's unwavering and unqualified affirmative maintenance of a statutory ban on elective abortion since 1864 (albeit enjoined since 1973), § 1-219(A)'s pronouncement of the state's public policy essentially to restrict abortion to the extent permitted by "the Constitution of the United States and decisional interpretations thereof by the United States Supreme Court" and, finally, S.B. 1164's construction provision that clearly states that the legislature did not intend to repeal § 13-3603 by passing § 36-2322(B).  *See* Part I, E ¶ 40.  It is the dissent's interpretation—deliberately blind to Arizona's relevant statutory history, public policy pronouncement, and the legislature's explicit construction provision contradicting the dissent's conclusion—that is strained.  The only elephant hiding in a mousehole is the dissent's contention that the legislature's curtailment of access to elective abortion in § 36-2322 and its accompanying express preservation of a statutory ban on all elective abortions was intended to create an independent statutory authority for elective abortion that vitiates § 13-3603 and survives *Roe*'s demise.  *See* Part I, C ¶ 31.

## IV.

¶62        Hazelrigg requests attorney fees and costs under the private attorney general doctrine.  Under the private attorney general doctrine, we may award attorney fees "to a party who has vindicated a right that: (1) benefits a large number of people; (2) requires private enforcement; and (3) is of societal importance."  *Cave Creek Unified Sch. Dist. v. Ducey*, 233 Ariz. 1, 8 ¶ 26 (2013) (quoting *Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609 (1989)).  Despite Hazelrigg's intervenor status, private enforcement was not required to resolve this case.  In fact, then-Attorney General Brnovich initiated the trial court litigation, and Yavapai County Attorney Dennis McGrane sought to intervene.  Therefore, because this case did not require private enforcement, we decline to award attorney fees and costs under the private attorney general doctrine.

**CONCLUSION**

**¶63**        The abortion issue implicates morality and public policy concerns, and invariably inspires spirited debate and engenders passionate disagreements among citizens.  A policy matter of this gravity must ultimately be resolved by our citizens through the legislature or the initiative process.  Today, we decline to make this weighty policy decision because such judgments are reserved for our citizens.  Instead, we merely follow our limited constitutional role and duty to interpret the law as written.  *See* Ariz. Const. art 3; *Ariz. Sch. Bds. Ass'n v. State*, 252 Ariz. 219, 229 ¶ 45 (2022) ("We respect the role of the legislature in the discharge of its constitutional duties . . . and we heed our constitution's fundamental premise that the division of powers necessarily impels judicial restraint, particularly in the realm of lawmaking.").  For the reasons discussed, the legislature has demonstrated its consistent design to restrict elective abortion to the degree permitted by the Supremacy Clause and an unwavering intent since 1864 to proscribe elective abortions absent a federal constitutional right—precisely what it intended and accomplished in § 36-2322.  To date, our legislature has never affirmatively created a right to, or independently authorized, elective abortion.  We defer, as we are constitutionally obligated to do, to the legislature's judgment, which is accountable to, and thus reflects, the mutable will of our citizens.

**¶64**        We affirm the trial court's judgment vacating the injunction of § 13-3603, vacate the court of appeals' opinion and stay of enforcement of § 13-3603, and remand to the trial court for potential consideration of the remaining constitutional challenges to § 13-3603 alleged in Planned Parenthood's complaint for declaratory relief.  Although we lift the stay on enforcement of § 13-3603, we do so with two caveats.  First, § 13-3603 may be enforced prospectively only.  Second, we stay enforcement of § 13-3603 for fourteen calendar days from the filing date of this Opinion to permit the parties, on remand, to determine whether to pursue remaining issues raised in the trial court and, if so, to request further stay relief at the trial court's discretion.

TIMMER, VCJ., joined by BRUTINEL, CJ., dissenting:

¶65        Whether women have a federal constitutional right to terminate a pregnancy before fetal viability has been a hotly debated and extraordinarily divisive issue in Arizona and, indeed, in our entire country. Yet, after the Supreme Court ended the debate in June 2022 by issuing *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 231–32 (2022), to overrule *Roe v. Wade*, 410 U.S. 113 (1973), the Arizona Legislature stood pat. During its 2023 session, the legislature did not (1) repeal A.R.S. § 36-2322(B), which exempts physicians from prosecution if they perform abortions when a fetus has a gestational age less than fifteen weeks or if the pregnant woman would otherwise suffer substantial and irreversible health consequences; (2) repeal or curtail other abortion-regulating statutes in Title 36; or (3) clarify the impact of A.R.S. § 13-3603, the near-total abortion ban that lay dormant since *Roe* issued in 1973, on multiple modern-era statutes. Instead, the legislature purposely chose to leave all these statutes fully intact and simultaneously operational.

¶66        Nevertheless, relying on a statutory construction note tucked within a session law predating *Dobbs*, the majority interprets § 36-2322(B) as providing that if *Roe* was overruled, the state would turn back the clock to 1973 by enforcing the near-total abortion ban against physicians, even if they comply with § 36-2322(B) by performing elective abortions before the fifteen-week gestation point or performing abortions when necessary to prevent serious impairment to the pregnant woman's health. I strongly disagree. As the adage goes, the legislature does not ordinarily "hide elephants in mouseholes." *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001); *Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 330 ¶ 30 (2011) (Bales, J., dissenting). And the legislature neither did so nor could do so here with a session law note existing wholly apart from statutory text. Sections 13-3603 and 36-2322(B) can and should be interpreted harmoniously to permit their joint enforcement until the legislature or the people, through the initiative process, say otherwise. This means physicians should be permitted to lawfully perform abortions before the fifteen-week gestation point or when necessary to preserve the pregnant woman's health. (Notably, both laws would remain subject to challenge

under Arizona's constitution.    That challenge is not at issue here.)
Respectfully, I dissent.

## A. Both A.R.S. § 13-3603 And A.R.S. § 36-2322(B) Are Clear And Unambiguous, Making Judicial Interpretation Unnecessary And Inappropriate.

**¶67**         Section 13-3603, the near-total abortion ban enjoined as unconstitutional by the court of appeals in 1973 after *Roe*, has remained essentially unchanged since 1865:

> A person who provides, supplies or administers to a pregnant woman, or procures such woman to take any medicine, drugs or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, *unless it is necessary to save her life*, shall be punished by imprisonment in the state prison for not less than two years nor more than five years.

(Emphasis added); *see also* Howell Code, ch. 10, § 45 (1865). Section 13-3603 is unambiguous, and no one suggests otherwise.  Any person who performs an abortion or assists in one must be imprisoned for at least two years and not more than five years.  The statute uses the above-italicized conditional clause to identify the only exception to the total ban: when "it is necessary to save [the pregnant woman's] life."  Otherwise, the prohibition applies regardless of the pregnancy's duration, whether it resulted from rape or incest, and even if a physician concludes that continuing the pregnancy would substantially and irreversibly impair the woman's health.

**¶68**         Since   2000,   A.R.S.   § 36-2301.01(A)(1)   has   prohibited physicians from "knowingly perform[ing] an abortion of a viable fetus" unless "necessary to preserve the life or health of the [pregnant] woman." *See* 2000 Ariz. Sess. Laws ch. 365, § 2 (2d Reg. Sess.).  In 2022, the legislature enacted § 36-2322(B) to further restrict when a physician may perform an abortion.  *See* 2022 Ariz. Sess. Laws ch. 105, § 1 (2d Reg. Sess.) (leaving § 36-2301.01(A) in place and operational).  At that time, the Supreme Court was still considering *Dobbs*, which concerned the constitutionality of

Mississippi's "Gestational Age Act" (an act containing a statute nearly identical to § 36-2322). Section 36-2322(B) went into effect three months after the opinion in *Dobbs* issued and provides as follows: "*Except in a medical emergency*, a physician may not intentionally or knowingly perform, induce or attempt to perform or induce an abortion *if* the probable gestational age of the unborn human being has been determined to be greater than fifteen weeks."[9] (Emphasis added.) A physician who violates § 36-2322(B) is guilty of a class 6 felony, which is punishable by up to two years' imprisonment, and the state will suspend or revoke the physician's license to practice medicine. *See* A.R.S. §§ 36-2324(A), -2325(A); 13-702(D).

**¶69**        I disagree with the majority that § 36-2322(B) is ambiguous. *See supra* ¶¶ 21–22. That statute has only one reasonable meaning, and we should apply it. *See Glazer v. State*, 237 Ariz. 160, 163 ¶ 12 (2015). We start with the statute's text "because it is the most reliable indicator of a statute's meaning." *State v. Holle*, 240 Ariz. 300, 302 ¶ 11 (2016). If the legislature's intent is "readily discernable from the face of the statute," we do not resort to other methods of statutory interpretation, like examining a statute's context, history, or purpose. *See id.*; *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 411 ¶ 8 (2023). Nor do we attempt to divine and give effect to the legislature's unexpressed intent or look to session laws to manufacture ambiguity where none exists. *See Holle*, 240 Ariz. at 302 ¶ 11.

**¶70**        Like § 13-3603, the territorial-era abortion ban, § 36-2322(B) uses conditional words to precisely identify conduct that is lawful and therefore permissible. Specifically, a physician commits a crime only "*if*" the physician performs an abortion when the fetus has a gestational age

---

[9] A "medical emergency" occurs when a physician makes a "good faith clinical judgment" that the pregnant woman suffers a medical condition that "necessitate[s] the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function." A.R.S. § 36-2321(7). "Major bodily function[s]" include "functions of the immune system, normal cell growth, and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine and reproductive functions." § 36-2321(6).

greater than fifteen weeks "[*e*]*xcept* in a medical emergency." § 36-2322(B) (emphasis added). By default, all other physician-performed abortions are permissible and lawful under the provision, assuming the physician complies with other statutes not before us.[10] *See* A.R.S. § 13-103(A) ("No conduct or omission constitutes an offense . . . unless it is an offense . . . under this title or under another statute or ordinance."). The statute has no other reasonable interpretation.

¶71          *United States v. Vuitch*, 402 U.S. 62 (1971), supports this plain-meaning interpretation. There, the Supreme Court addressed the District of Columbia's indictment of a physician under the district's abortion ban. *Id.* at 63–64. Similar to Arizona's territorial-era abortion ban, the District of Columbia's ban prohibited abortions on threat of a multi-year prison term "unless the same were done as necessary for the preservation of the mother's life or health." *See id.* at 68 (quoting D.C. Code § 22-201 (1901)). The issue was whether the statute was unconstitutionally vague. *See id.* at 63–64. The Court upheld the statute, reasoning in part that the ban's exception constituted an element of the crime the government must prove rather than an affirmative defense. *See id.* at 71. In doing so, the Court characterized abortions falling within the life-or-health exception as "legal," and elaborated as follows:

> The statute does not outlaw all abortions, but only those
> which are not performed under the direction of a competent,

---

[10]   Even when a physician complies with § 36-2322(B), the physician nevertheless commits a crime if he performs an abortion on a minor without receiving parental consent or judicial authorization. *See* A.R.S. § 36-2152(A). The physician also commits a crime by performing an abortion while knowing the woman is seeking to avoid having a baby with a genetic abnormality or of a particular race or gender. *See* A.R.S. § 13-3603.02(A)(1). The federal district court preliminarily enjoined § 13-3603.02(A)(1) as it concerns genetic abnormalities because the provision is likely unconstitutionally vague and imposed an undue burden on a woman's — now abrogated — federal constitutional right to terminate a pre-viability pregnancy. *See Isaacson v. Brnovich*, 563 F. Supp. 3d 1024, 1047 (D. Ariz. 2021).

licensed physician, and those not necessary to preserve the mother's life or health . . . . When Congress passed the District of Columbia abortion law in 1901 and amended it in 1953, it expressly authorized physicians to perform such abortions as are necessary to preserve the mother's "life or health."

*See id.* at 69–70. Like the District of Columbia's ban, § 36-2322(B) clearly permits physicians to lawfully perform abortions that are not expressly outlawed.

¶72 The majority agrees that this is the logical, plain reading of § 36-2322. *See supra* ¶ 21. Nevertheless, because the statute does not explain how it operates alongside § 13-3603, the majority finds that § 36-2322(B)'s conditional language can also be reasonably interpreted as "merely acknowledg[ing] the existence of a contemporaneous federal constitutional right to abortion under *Roe*," which forced the legislature to "qualify the circumstances under which a physician may be penalized." *See supra* ¶¶ 21–22, 55. Finding the statute therefore ambiguous, the majority then examines secondary principles—including, most prominently, the construction note in the session law that enacted § 36-2322 and other statutes. *See supra* ¶¶ 23–31.

¶73 In my view, the majority errs by finding § 36-2322(B) ambiguous and then using the construction note to interpret the statute in a way unsupported by its plain textual meaning. First, nothing in the statutory text even hints that § 36-2322(B)'s identification of legal, and therefore permissible, abortions depends on *Roe*'s continuing enforceability. And no language suggests that any aspect of § 36-2322(B) would become inoperative if the Supreme Court overruled *Roe*.

¶74 Second, § 36-2322's failure to explain its effect on § 13-3603 does not cloud the plain meaning of § 36-2322(B)'s enacted text. The authorities cited by the majority do not support that a statute's silence about its *impact* on the operation of a different statute creates an ambiguity in textual *meaning*. *See S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023); *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017); *State v. Sweet*, 143 Ariz. 266, 269–70 (1985). Notably, the majority does not

identify any unclear language in § 36-2322(B) resulting from its silence concerning § 13-3603. There simply is no "textual ambiguity," as the majority claims. *See supra* ¶ 21. Section 36-2322(B) has a single, plain meaning that is not made ambiguous by § 13-3603's existence or by the existence of other statutes outlawing abortions in defined circumstances. *See* Part I, D ¶ 99. The conflict between the statutes only comes into play in deciding whether one repeals the other or whether they can be harmonized. *See* Part I, C–D ¶¶ 85–91. It does not transform § 36-2322(B)'s plain language into ambiguous text that needs further interpretation.

**¶75** Third, § 36-2322(B)'s conditional language cannot logically reflect a forced accommodation to *Roe*, as the majority concludes, because *Roe* would not have tolerated the after-fifteen-week ban. *Roe* held that women have a due process right to terminate a pregnancy before the fetus becomes viable and to obtain that abortion without the government's undue interference. *See Roe*, 410 U.S. at 164; *see also Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846, 873, 876–77 (1992) (reaffirming *Roe*'s central holding but replacing its rigid trimester framework with an "undue burden" test to determine whether abortion regulations are permissible). Viability at the time *Roe* was decided was around twenty-eight weeks, and in 2022 was suggested to be twenty-three or twenty-four weeks. *See Dobbs*, 597 U.S. at 276. Also, the Supreme Court stressed after *Roe* that determining precisely when viability is reached must be left to the attending physician in each case, and neither a legislature nor a court could establish viability in terms of gestational weeks or other factors. *See Colautti v. Franklin*, 439 U.S. 379, 388–89 (1979), *abrogated by Dobbs*, 597 U.S. 215. For that reason — as the legislature undoubtedly knew when it enacted § 36-2322(B) — the Ninth Circuit Court of Appeals invalidated A.R.S. § 36-2159, which banned elective abortions after twenty weeks.[11] *See Isaacson v. Horne*, 716 F.3d 1213, 1225–26 (9th Cir. 2013). But for *Dobbs*, the more-restrictive after-fifteen-week ban would undoubtedly have met the same fate. In short, *Roe* did not force the legislature to allow abortions up to the fifteen-week gestation point.

---

[11]   Nevertheless, as with § 13-3603, the legislature has never repealed § 36-2159.

¶76 Fourth, the majority's focus on whether § 36-2322(B) grants an affirmative right to an abortion akin to *Roe*'s recognition of a constitutional right is misplaced. *See supra* ¶ 22 ("Section 36-2322's text in isolation, therefore, does not resolve the fundamental issue before us: whether the statute creates independent statutory authority for abortion intended to repeal or restrict § 13-3603 . . . ."); ¶ 23 ("To determine if Title 36 creates a right to abortion, or otherwise provides independent statutory authority to perform the procedure . . . we must consider S.B. 1164's construction provision."); ¶ 42 (concluding "the legislature did not intend to create a privilege secured by law to obtain or perform an abortion" by enacting § 36-2322(B)). Section 36-2322(B) proscribes abortions performed by physicians under particular circumstances. As previously explained, *see* Part I, A ¶¶ 70–71, § 36-2322(B) provides that all other abortions performed by physicians are necessarily lawful and permitted under the criminal law because they are not proscribed. *See* § 13-103(A). Proscribing conduct does not require the legislature to grant people an affirmative right to engage in conduct falling outside the proscription, and the majority does not cite any authority suggesting otherwise. Notably, two years before *Roe* and without considering whether women had a right to a pre-viability abortion, the Supreme Court in *Vuitch* interpreted the District of Columbia's abortion ban as providing that abortions falling within the life-or-health exception are permitted and lawful. Likewise, at a time when women lacked a federal constitutional or statutory right to an abortion, the legislature enacted what is now § 13-3603, which permits women to obtain abortions to save their lives. Doing so did not grant women a statutory *right* to an abortion under those circumstances.

¶77 An example raised at oral argument illustrates the point. I can legally drive thirty-five miles per hour when the speed limit is forty-five miles per hour. But the law establishing the speed limit does not grant me an affirmative right to drive thirty-five miles per hour; I simply will not be ticketed for doing so. Likewise, under § 36-2322(B), women do not need an affirmative right to terminate a pregnancy for a physician to perform an abortion either before the fifteen-week gestation point or to prevent the pregnant woman from suffering serious health conditions; the physician simply will not be prosecuted for doing so.

¶78 Too, the legislature does not affirmatively grant a right by *decriminalizing* conduct. For example, in 2021, the legislature repealed A.R.S. § 13-3604, which had provided that a woman who has an abortion that is not necessary to save her life shall be imprisoned from one to five years. *See* 2021 Ariz. Sess. Laws ch. 286, § 3 (1st Reg. Sess.). And when enacting § 36-2322, the legislature provided that the "pregnant woman on whom an abortion is performed, induced or attempted in violation of § 36-2322 may not be prosecuted for conspiracy" to violate the statute. § 36-2324(B). By affirmatively declining to hold women criminally responsible for seeking or obtaining an abortion, the legislature did not grant women a right to seek an abortion; it simply decided the state would not prosecute women for doing so. The majority misses the mark by asking and then answering whether § 36-2322(B) grants a limited right to abortion.

¶79 Fifth, the majority incorrectly elevates the construction note in § 36-2322(B)'s session law to equal its text. Instead of using the note as a tool in interpreting any ambiguous language in the statutory text, the majority incorrectly uses the note to *create* an ambiguity in the text. *See supra* ¶ 22 ("[A]ny interpretation of the statute that ignores or minimizes the impact of *Dobbs*' disavowal of a federal constitutional abortion right runs headlong into the construction provision of Senate Bill 1164 . . . the genesis of § 36-2322 and part of what the legislature enacted."); *id.* ("We must interpret the statute in its proper context" which "requires us to reconcile the legislature's construction provision, which specifically preserves § 13-3603, and the text of § 36-2322 . . . ."); ¶ 24 ("The construction provision is part of the bill that legislators [had] before them and approve[d], and has the same force of law as codified law."); ¶ 25 (stating the Court must consider the construction note to discern § 36-2322(B)'s meaning "because [the construction note] is part of the bill the legislature approved").

¶80 The "construction" note, which—despite its title—expresses only legislative intent and provides absolutely no insight on what the legislature meant by any language in the statute, is emphatically not part of the statutory text. *See* 2022 Ariz. Sess. Laws ch. 105, § 2 (2d Reg. Sess.). We have repeatedly stressed that declarations of legislative intent in an enactment are "devoid of operative effect." *See Redgrave v. Ducey*, 251 Ariz. 451, 457 ¶ 22 (2021) (concluding that if statutory text conflicts with a

statement of purpose or intent, "the text must prevail"); *Cronin v. Sheldon*, 195 Ariz. 531, 538 ¶ 30 (1999) ("The preamble [stating legislative purpose and intent] is devoid of operative effect."); *Sakrison v. Pierce*, 66 Ariz. 162, 172 (1947) (stating that the policy section of an act would be controlling only "if we were called upon to interpret an operative portion of the statute that was ambiguous or of doubtful meaning" and emphasizing that "the policy of the law is not controlling and can be considered only where the statute is ambiguous" (quoting 59 C.J.S., *Statutes*, § 602 for the latter quote)). The majority ignores this principle.

¶81 We have also consistently emphasized that if a statute has a plain textual meaning, we simply apply it rather than construe it by examining secondary sources. *See, e.g.*, *Mussi v. Hobbs*, 255 Ariz. 395, 402 ¶ 34 (2023) ("It is a basic principle that courts will not read into a statute something which is not within the manifest intention of the legislature *as indicated by the statute itself*." (emphasis added) (quoting *Town of Scottsdale v. State ex. rel. Pickrell*, 98 Ariz. 382, 386 (1965))); *S. Ariz. Home Builders Ass'n*, 254 Ariz. at 286 ¶ 31 ("Statutory interpretation requires us to determine the meaning of the words the legislature chose to use."); *City of Mesa v. Killingsworth*, 96 Ariz. 290, 294 (1964) ("Where the statute is unambiguous, the courts will only apply the language used and not interpret, for the statute speaks for itself."). We hold the legislature to its enacted statutory text, and the majority therefore errs by using the construction note to vary § 36-2322(B)'s plain language. *See Roberts v. State*, 253 Ariz. 259, 266 ¶ 20 (2022) (quoting *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965)) (stating "courts will not read into a statute something which is not within the manifest intention of the legislature *as gathered from the statute itself*" (emphasis added)); *In re McLauchlan*, 252 Ariz. 324, 326 ¶ 15 (2022) ("Legislative history is not a substitute for clear legislative language . . . ."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56–58 (2012) (noting the supremacy of statutory text and explaining that statutory purpose "sheds light only on deciding which of various *textually permissible meanings* should be adopted").

¶82 For all these reasons, it is simply implausible to interpret § 36-2322(B)'s conditional language as merely acknowledging *Roe*'s restriction on the state's ability to prohibit pre-viability abortions. The

statute says what it means and means what it says: The state will prosecute physicians for performing abortions after the fetus reaches fifteen weeks in age unless a medical emergency requires the procedure. The state will not prosecute physicians for performing abortions before the fetus reaches fifteen weeks in age. These abortions are lawful. There is no room for misunderstanding.

**¶83** My colleagues accuse me of "deliberately blind[ing]" myself to legislative history and the legislature's construction note in interpreting § 36-2322(D). *See supra* ¶ 61. Not so. With eyes wide open, I fulfill the legislature's intent by giving plain meaning to the language actually enacted. I decline to engage in the guesswork needed to engraft onto § 36-2322(B)'s straightforward language a meaning the legislature may or may not have intended had it anticipated the Supreme Court would overrule *Roe*.

**¶84** But what effect does a reinvigorated § 13-3603 have on § 36-2322(B)? The majority does not address whether the statutes can be harmonized, as the court of appeals held. *See Planned Parenthood Ariz., Inc. v. Brnovich*, 254 Ariz. 401, 405 ¶ 13 (App. 2022). Because it concludes that § 36-2322(B) does not create a legal privilege to obtain or perform an abortion, the majority finds no conflict and thus "[no] need to harmonize" the two statutes. *See supra* ¶ 42. I disagree, so I turn to that issue.

## B. Sections 13-3603 And 36-2322(B) Conflict.

**¶85** The conflict between §§ 13-3603 and 36-2322(B) is readily apparent. On the one hand, § 13-3603 criminalizes performing any abortions, unless necessary to save the pregnant woman's life. On the other hand, § 36-2322(B) criminalizes physician-performed abortions only when the physician performs an abortion after the fetus is fifteen weeks of age and a medical emergency does not necessitate the procedure. Consequently, a physician who performs an abortion in compliance with § 36-2322(B) nevertheless violates § 13-3603, unless the abortion was necessary to save the pregnant woman's life. In that situation, the statutes operate inconsistently and therefore conflict. *See State v. Jones*, 235 Ariz. 501, 503 ¶ 8 (2014); *see also Cave Creek Unified Sch. Dist. v. Ducey*, 233 Ariz. 1, 7

¶ 24 (2013) (holding that a conflict exists when statutes cannot be read "to give each effect and meaning").

## C. Section 36-2322(B) Operates As An Exception To § 13-3603.

**¶86** We have repeatedly stated that courts have a duty to harmonize statutes to rectify conflicts, as far as possible, and avoid construing one statute as impliedly repealing another. *See, e.g.*, *State v. Rice*, 110 Ariz. 210, 213 (1973); *State Land Dep't. v. Tucson Rock & Sand Co.*, 107 Ariz. 74, 77 (1971); *Ard v. State*, 102 Ariz. 221, 224 (1967). Reconciling any contradictions "giv[es] force and meaning to all statutes involved." *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 333 ¶ 28 (2001).

**¶87** The conflict between the statutes here is reconciled by applying the general/specific canon. That canon is not used to discern the *meaning* of statutory language but instead directs the *operation* of conflicting provisions. *See Guard./Conserv. of Denton*, 190 Ariz. 152, 157 (1997). It provides that "[w]hen 'two conflicting statutes cannot operate contemporaneously, the more recent, specific statute governs over an older, more general statute.'" *Jones*, 235 Ariz. at 503 ¶ 8 (quoting *UNUM Life Ins. Co.*, 200 Ariz. at 333 ¶ 29); *see also State v. Santillanes*, 541 P.3d 1150, 1155–56 ¶ 20 (Ariz. 2024) (recognizing the canon); Scalia & Garner 183 ("If there is a conflict between a general provision and a specific provision, the specific provision prevails.").

**¶88** As the more specific and recent statute, § 36-2322(B) applies in circumstances governed by it. *See Jones*, 235 Ariz. at 503 ¶¶ 8, 11; *Guard./Conserv. of Denton*, 190 Ariz. at 157; *Lemons v. Superior Court*, 141 Ariz. 502, 505 (1984). Because § 13-3603 is the more general statute, outlawing almost all abortions, § 36-2322(B) operates as an exception to § 13-3603's near-total ban. *See State v. Cassius*, 110 Ariz. 485, 487 (1974) ("Where a statute first expresses a general intent, and later an inconsistent particular intent, such particular intent will be taken as an exception to the general intent, and both will stand.").

**¶89** To be clear, § 36-2322(B) does not repeal any aspect of § 13-3603. *See* Scalia & Garner 184 ("Note that the general/specific canon

does not mean that the existence of a contradictory specific provision voids the general provision. Only its application to cases covered by the specific provision is suspended; it continues to govern all other cases."). Instead, § 36-2322(B) negates § 13-3603 "only in its application to the situation that [§ 36-2322(B)] covers." *Id.* at 185. Contrary to the majority's characterization, *see supra* ¶ 42, applying § 36-2322(B) as an exception to § 13-3603 does not "repeal" any part of the latter statute. *See Cassius*, 110 Ariz. at 487 (finding that a later criminal statute operates as an exception to a conflicting general statute, neither statute is repealed, and "each is given full effect").

**¶90** So, if a physician performs an abortion at the thirteen-week gestation point as permitted by § 36-2322(B), the state cannot prosecute the physician under § 13-3603. Section 36-2322(B) operates as an exception, just like § 13-3603's exception for abortions performed to save the pregnant woman's life. But if the physician performs an abortion at the sixteen-week gestation point and without a medical emergency in violation of § 36-2322(B), the state may prosecute the physician under either § 13-3603 or § 36-2322(B). *See United States v. Batchelder*, 442 U.S. 114, 123–24 (1979) ("[W]hen an act violates more than one criminal statute, the Government may prosecute[] under either so long as it does not discriminate against any class of defendants."); *State v. Romero*, 130 Ariz. 142, 147 (1981) (concluding "[t]here is no question that the Legislature could proscribe the conduct covered by [two different statutes]" so long as the state did not use an "unjustifiable selection standard"). No exception to prosecution would exist under either statute. And, of course, the state may prosecute any non-physician, including other medical professionals, for performing an abortion in violation of § 13-3603.

**¶91** Resolving the conflict in this way recognizes that each statute is given full effect as parts of a single statutory scheme governing abortions. *See Fleming v. State Dep't of Pub. Safety*, 237 Ariz. 414, 417 ¶ 12 (2015) ("[W]hen statutes relate to the same subject matter, we construe them together as though they constitute one law . . . ."). It does not matter that the provisions are in different statutory chapters or that § 13-3603 lay largely dormant for decades until reinvigorated by *Dobbs*. *See State ex rel.*

*Larson v. Farley*, 106 Ariz. 119, 122 (1970). Related statutes "must be construed as one system governed by one spirit and policy." *Id.*

¶92 The majority's position neutralizes most of Title 36, which regulates and restricts abortions and abortion clinics, and impliedly repeals the part of § 36-2322(B) permitting physicians to lawfully perform abortions before the fetus is fifteen weeks old or in a medical emergency. But viewing § 36-2322(B) as an exception to § 13-3603, as I do, avoids impliedly repealing any statute and results in a single, cohesive legislative scheme. *See Fleming*, 237 Ariz. at 417.

**D. Neither The Construction Note Nor Any Other Law Triggers § 36-2322(B)'s Nullification Upon *Roe*'s Demise and § 13-3603's reanimation.**

¶93 The only way to conclude that § 36-2322(B) is not given full effect as an exception to § 13-3603 is if the legislature had enacted a "trigger clause" abrogating § 36-2322(B) upon *Roe*'s demise. Indisputably, the legislature did not expressly do so. Nevertheless, the majority finds "a discernible comprehensive trigger provision" by considering the legislature's continuing recognition of § 13-3603, the session law's construction note, and A.R.S. § 1-219(A), which states that laws should be interpreted as acknowledging that a fetus has the same rights as all persons. *See supra* ¶ 40. My colleagues then conclude *Dobbs* pulled this trigger by "remov[ing] the sole authority for elective abortion in Arizona," thereby abrogating § 36-2322(B). *See supra* ¶¶ 40, 43.

¶94 Before addressing the majority's reasoning, it is useful to consider what constitutes a trigger clause. Mississippi's abortion scheme provides an example. In 2007, the Mississippi Legislature enacted a law banning all abortions "except in the case where necessary for the preservation of the mother's life or where the pregnancy was caused by rape." Miss. Code Ann. § 41-41-45(2). *Roe*, of course, would have abrogated that ban. Consequently, the Mississippi Legislature made the law effective ten days *after* the Mississippi Attorney General publishes a determination that the Supreme Court has overruled *Roe* and the ban would probably be upheld by that Court as constitutional. *See* 2007 Miss. Laws ch. 441, §§ 4, 6.

Those circumstances would automatically "trigger" the almost total ban on abortion.

**¶95** Mississippi's fifteen-week gestation statute, in turn, has a provision in its text triggering the statute's own demise upon § 41-41-45(2)'s effective date. Mississippi Code § 41-41-191(8) provides that "[a]n abortion that complies with this section, but violates any other state law, is unlawful." Thus, if Mississippi's near-total abortion ban became effective as certified by the Mississippi Attorney General, abortions previously permitted by § 41-41-191 would become "unlawful" without further legislative action. The Mississippi Legislature explicitly directed what would occur if the Supreme Court overruled *Roe* as certified by the Mississippi Attorney General: the state's near-total ban would go into effect and abortions complying with the fifteen-week gestation statute would nevertheless become unlawful as violating the new near-total ban.

**¶96** Neither § 36-2322(B) nor any other Arizona law has trigger language like § 41-41-191(8)'s clause. The majority characterizes the session law construction note as "virtually identical" to Mississippi's § 41-41-191(8) and asserts either both must have a trigger clause or neither do. *See supra* ¶ 39. But the majority refuses to recognize and give weight to the crucial, operative language that *explicitly* triggers § 41-41-191's demise upon its conflict with another statute. *See id.* Critically, unlike Mississippi's legislature, our legislature opted not to provide that an abortion that complies with § 36-2322(B) "but violates any other state law," including § 13-3603, makes the abortion "unlawful." And in my view, the construction note, together with § 13-3603's continued existence and § 1-219(A)'s interpretation directive acknowledging fetal rights, cannot be dressed up as a comparable trigger clause.

**¶97** The legislature included § 36-2322(B) within a new article entitled "Gestational Limit on Abortion." *See* 2022 Ariz. Sess. Laws ch. 105 (2d Reg. Sess.). Nothing in the statutory text even arguably constitutes a trigger clause. The construction note contained within the session law provides:

This act does not:

1. Create or recognize a right to abortion or alter generally accepted medical standards. The Legislature does not intend this act to make lawful an abortion that is currently unlawful.

2. Repeal, by implication or otherwise, section 13-3603, Arizona Revised Statutes, or any other applicable state law regulating or restricting abortion.

*See* 2022 Ariz. Sess. Laws ch. 105, § 2 (2d Reg. Sess.). Nothing in this note conditions § 36-2322(B)'s effectiveness on whether or not the Supreme Court overrules *Roe*. And it certainly would have been easy to include that condition in a sentence or two if the legislature had intended that result. *See* Scalia & Garner at 181–82 (highlighting "[t]he familiar 'easy-to-say-so-if-that-is-what-was-meant' rule of statutory interpretation" (quoting *Commissioner v. Beck's Estate*, 129 F.2d 243, 245 (2d Cir. 1942))). Undoubtedly, the legislature knew how to use trigger clauses because it has explicitly inserted them into other abortion-related session laws. *See, e.g.,* 1999 Ariz. Sess. Laws ch. 311, §§ 12, 13 (1st Reg. Sess.) (calling for the conditional repeal and the conditional enactment of statutory provisions triggered by a court finding that the statutory definition of "abortion clinics" is unconstitutional). And the Arizona Legislature in 2022 followed a drafting manual explaining how to word such provisions. *See* Ariz. Legis. Bill Drafting Manual § 4.4 at 30–32 (2021–2022) (explaining conditional enactments and repeals and providing sample language not found in § 36-2322 or the construction note); *see also* A.R.S. § 41-1304(A) (charging a council of legislators with providing bill-drafting services to improve the quality of legislation).

**¶98** The majority reaches the opposite conclusion, but I do not find its reasoning persuasive. First, the construction note's statement that the act including § 36-2322(B) does not "[c]reate or recognize" women's right to abortion does not mean a revived § 13-3603 serves to make unlawful all abortions that comply with § 36-2322(B). As previously explained, the legislature does not have to affirmatively grant women a right to an abortion to criminalize or not criminalize performing abortions

in some situations. *See* Part I, A ¶¶ 76–78. Thus, the legislature did not affirmatively grant the right by permitting anyone to perform a lawful abortion if necessary to save a pregnant woman's life, *see* § 13-3603, or by permitting physicians to perform lawful abortions before the fifteen-week gestation point or in a medical emergency, *see* § 36-2322(B).

**¶99** Second, the note's statement that "[t]he Legislature does not intend this act to make lawful an abortion that is currently unlawful" did not trigger § 36-2322(B)'s abrogation upon *Roe*'s demise. The majority concludes that the only "currently unlawful" abortions are ones proscribed by § 13-3603 because only that provision is more restrictive than § 36-2322(B). *See supra* ¶ 29. Thus, because nearly all abortions under § 13-3603 are unlawful, the majority reasons that abortions performed before the fifteen-week gestation point or in a medical emergency per § 36-2322(B) became "unlawful" when the injunction was lifted on § 13-3603. *See supra* ¶ 29.

**¶100** The majority's factual premise is incorrect because the legislature included *all* abortion laws within the "currently unlawful" clause and not just those more restrictive than § 36-2322(B). *See* 2022 Ariz. Sess. Laws ch. 105, § 2 (2d Reg. Sess.) ("The Legislature does not intend this act to make lawful an abortion that is currently unlawful."). Many statutes other than § 13-3603 criminalize abortions. And unlike § 13-3603, those statutes operated without restriction when the legislature enacted § 36-2322(B), making abortions performed in violation of those provisions "currently unlawful." *See* A.R.S. § 13-3603.01 (proscribing partial-birth abortions unless necessary to save the life of the pregnant woman); § 36-2152(A) (prohibiting physicians from performing abortions on minors without parental consent or judicial authorization); § 36-2301.01 (prohibiting a physician from "knowingly perform[ing] an abortion of a viable fetus" except in a medical emergency); § 13-3603.02(A)(1) (proscribing abortions committed when a physician knows the woman is seeking to avoid having a baby with a genetic abnormality or of a particular race or gender).

**¶101** Notably, at the time the legislature enacted § 36-2322(B), abortions up to the fifteen-week gestation point and those performed in a

medical emergency were *not* "currently unlawful" under § 13-3603 because that statute had been enjoined for more than fifty years. It would be downright bizarre for the legislature to have enacted § 36-2322(B) while simultaneously intending to make "unlawful" abortions complying with that statute.

¶102          For all these reasons, it is implausible to conclude the legislature planted within the construction note a bombshell of reverting to a near–total ban on abortion—including those to preserve a woman's health—by using the term "currently unlawful" as referring to abortions made unlawful by a long-enjoined § 13-3603 rather than currently operative statutes making certain abortions unlawful. *See Whitman*, 531 U.S. at 468; *Estate of Braden ex rel. Gabaldon*, 228 Ariz. at 330 ¶ 30 (Bales, J., dissenting). If the legislature intended otherwise, it could have easily said so.

¶103          Third, the note's statement that the act including § 36-2322(B) does not repeal § 13-3603 or other provisions "regulating or restricting abortions" does not mean that abortions permitted under § 36-2322(B) become unlawful if *Roe* is overruled and § 13-3603 is no longer enjoined. As previously explained, § 13-3603 does not have to be repealed for § 36-2322(B) to operate. *See* Part I, C ¶¶ 86–92. Both statutes can remain fully intact and operate as one cohesive act. And by explicitly keeping other statutes "regulating or restricting abortions" intact, the legislature signaled its intention to maintain a single, cohesive system in which *all* statutes remain fully operational. Under the majority's view, maintaining other statutes "restricting abortions" would be impossible because § 13-3603's near-total ban would engulf those provisions without exception.

¶104          Fourth, § 1-219(A) provides no authority for concluding that abortions permitted under § 36-2322(B) would become unlawful under § 13-3603 if *Roe* was overruled. Section 1-219(A) is an interpretation provision and is not substantive. Because no language in the construction note can be interpreted as a trigger clause, § 1-219(A) adds nothing and does not support the majority's position.

¶105          In sum, unlike Mississippi's legislature, our legislature did not include a trigger clause in the act containing § 36-2322(B). Any

45

lingering doubt is further removed by considering the legislature's express statement of intent. In it, the legislature makes several findings of fact concerning gestation and the state's legitimate interests in protecting potential new life and the health of a pregnant woman. *See* 2022 Ariz. Sess. Laws ch. 105, § 3(A) (2d Reg. Sess.). It then affirmatively states what it intends to accomplish: "This Legislature intends through this act and any rules and policies adopted hereunder, to restrict the practice of nontherapeutic or elective abortion to the period up to fifteen weeks of gestation." *See* 2022 Ariz. Sess. Laws ch. 105, § 3(B) (2d Reg. Sess.). Nothing suggests an intent to make abortions permitted under § 36-2322(B) unlawful upon *Roe*'s demise.

## CONCLUSION

**¶106** All agree the legislature enacted § 36-2322(B) in hopes the Supreme Court in *Dobbs* would uphold Mississippi's similar Gestational Age Act. *See* Governor's Approval Message, 2022 Ariz. Sess. Laws ch. 105 (2d Reg. Sess.) ("This very issue is pending before the United States Supreme Court now in Dobbs v. Jackson Women's Health Organization."). But the legislature perhaps got more than it expected when *Dobbs* overruled *Roe*. Some, most, or even all legislators in 2022 would have included a trigger clause repealing § 36-2322(B) and other Title 36 laws if they foresaw that *Roe* would be overruled and the injunction on § 13-3603 lifted. But the legislature did not *state* that intent in any statute or session law, and we should not speculate about what it would have done. Justice Antonin Scalia and Bryan Garner, considered by many to be leading scholars in statutory interpretation, call doing otherwise as following, "[t]he false notion that when a situation is not quite covered by a statute, the court should reconstruct what the legislature would have done had it confronted the issue." Scalia & Garner at 349. They caution that "judicial predictions of how the legislature would have decided issues it did not in fact decide are bound to be little more than wild guesses." *Id.* at 350 (quoting Frank H. Easterbrook, *Statutes' Domains*, 50 U. Chi. L. Rev. 533, 547–48 (1983)).

**¶107** What the legislature did express in plain language was a statutory scheme that includes both § 13-3603 and § 36-2322(B). I would therefore apply the latter statute as an exception to the former, leaving both

fully intact and operative. This would mean physicians could perform abortions up to the fifteen-week gestation point or to preserve the pregnant woman's health without incurring harsh criminal penalties. If the legislature or the people desire a different result, either could enact a new law.

¶108 The majority's opinion today will undoubtedly be derided by many as result-oriented or a reflection of individual justices' ideology. My dissenting opinion will probably spark similar criticism. That is the cross borne by all judges in controversial social-issue cases like this one. But nothing is further from the truth. In upholding our oaths to follow the laws of this state, we simply disagree—vehemently—about what those laws mean. And in my view, the majority mistakenly returns us to the territorial-era abortion statute last operative in 1973. I would leave it to the people and the legislature to determine Arizona's course in the wake of *Roe*'s demise. With great respect for my colleagues, I dissent.